1
2
3
4
5

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
          ykrivoshey@bursor.com

6

*Attorneys for Plaintiff*

7

8

9

10

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17
18

EVA MARIE VENTI, on behalf of herself and all others similarly situated,

Plaintiff,

v.

GARMON CORPORATION,

Defendant.

Case No.   5:22-cv-782

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

Plaintiff Eva Marie Venti ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant Garmon Corporation ("Garmon" or "Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## **NATURE OF THE ACTION**

1.      This is a class action lawsuit brought on behalf of all people in the United States who purchased the following NaturVet-branded supplements for dogs (the "Supplements"):

- Glucosamine DS Plus Chews
- Glucosamine DS Chews and Tabs
- Glucosamine DS Plus Tabs
- Glucosamine DS Liquid
- ArthriSoothe-Gold Chews, Liquid and Tablets
- ArthriSoothe Hip & Joint Formula Tablets
- Hip & Joint Plus Chews
- Joint Health Level 3 Powder

2.      Defendant markets the Supplements as products that help maintain and improve joint health for dogs. The Supplements' labels and associated online representations refer to joint health. For example, the label of the Glucosamine DS Plus Chews represents that the Supplement "[s]upports connective tissue, cartilage health, and joint movement."

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



3.    Similarly, for the ArthriSoothe-Gold Chews product, Defendant represents that "[g]lucosamine, Chondroitin, MSM, Hyaluronic Acid, Green Lipped Mussel provide the optimum blend to enhance the body's normal repair of connective tissue and joints."[1]  Defendant further represents that "[g]lucosamine

---

[1] https://naturvet.com/product/arthrisoothe-gold-soft-chews-2/ (last visited 5/4/22).

CLASS ACTION COMPLAINT                                                                 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

provides the building blocks for synovial fluid, cartilage, and connective tissue and helps to stimulate the production of proteoglycans which help maintain the health and resiliency of joints and connective tissue."[2]   Defendant represents on the label of the product that "[g]lucosamine, MSM, Chondroitin and Green Lipped Mussel . . . support connective tissue, cartilage health, joint movement, and lubrication of joints."

_____

[2] *Id.*





4.      Each of the Supplements make representations regarding supporting hip and joint health and/or connective tissue, and each contain the same key active ingredients:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



5.      Defendant represents that the Glucosamine DS Liquid and Soft Chews Supplements "help maintain normal healthy cartilage and joint function in active pets."[3]

---

[3] https://naturvet.com/product/glucosamine-ds/ (last visited 5/4/22);
https://naturvet.com/product/glucosamine-ds-soft-chews/ (last visited 5/4/22).

6. Defendant represents that its Hip & Joint Chews, Hip & Joint Plus Chews, and Joint Health Level 3 Powder "support healthy hip and joint function."[4]

7. The main active ingredient in the Supplements is glucosamine hydrochloride.  As explained above, Defendant makes representations as to the efficacy of glucosamine in with regard to joint function and connective tissue support.

8. The second active ingredient in the Supplements is chondroitin sulfate, which, according to Defendant, also supports joint function and health, as well as connective tissue.

9. Unfortunately for consumers, however, the Supplements are a sham. Decades of studies and peer-reviewed tests have repeatedly shown that supplements containing glucosamine and chondroitin do not improve joint function in dogs.

10. In 2003, a double-blind randomized controlled trial ("RCT") involving 71 dogs over 70 days compared the efficacy of Cosequin (a supplement with glucosamine and chondroitin) against two non-steroidal anti-inflammatory drugs ("NSAIDs") and a placebo.[5]  The authors objectively assessed improvements in pain-related functional impairment by measuring ground reaction forces of arthritic

---

[4] https://naturvet.com/product/hip-joint-plus-soft-chew-bag/ (last visited 5/4/22); https://naturvet.com/product/hip-joint-soft-chew-bag/ (last visited 5/4/22); https://naturvet.com/product/joint-health-level-3-powder/ (last visited 5/4/22).
[5] Moreau, M., et al., *Clinical Evaluation Of A Nutraceutical, Carprofen And Meloxicam For The Treatment Of Dogs With Osteoarthritis*, Vet. Record No. 152 at 323-29 (2003).

limbs and there was subjective assessment by surgeons and owners of gait, joint mobility, joint pain and discomfort, lameness, and activity.  The researchers found that dogs treated with the supplement "showed no significant response in terms of the objective gait analysis or either of the subjective assessments during the study," while there was a significant response with one of the NSAIDs.  Likewise, as to the owners' subjective assessment, the supplement containing glucosamine and chondroitin provided "no significant improvements . . . ."

11.     In 2017, a double-blind, randomized and placebo-controlled trial studied 60 dogs over 97 days.[6]  Half of the dogs were given a supplement with glucosamine and chondroitin, and the other half were given a placebo.  The authors concluded that the supplement "did not have a beneficial treatment effect when compared to placebo treatment when evaluated by [subjective] daily owner questionnaire and [objective] patient activity counts."

12.     Other publications also indicate that Defendant's product claims about the Supplements are false.  Plumb's Veterinary Handbook, in both its 2008 and 2017 editions, noted that glucosamine/chondroitin supplements are "[w]ell tolerated, but efficacy is uncertain."  The Banfield Journal concluded in 2010 that "the benefits of using a combination of glucosamine hydrochloride and chondroitin sulfate

---

[6] Scott, et al., *Efficacy Of An Oral Nutraceutical For The Treatment Of Canine Arthritis: A Double-Blind Randomized, Placebo-Controlled Prospective Clinical Trial*, Vet. Comp. Ortho. Traumatol., 30 at 318-23 (2017).

nutraceuticals to improve symptoms associated with canine and feline joint disease has yet to be determined."

13.     Defendant, a large and sophisticated company, is undoubtedly aware of these studies and knows that the Supplements are ineffective.  Nevertheless. It continues to sell them to unsuspecting consumers nationwide.

14.     Plaintiff is a purchaser of the Supplements who asserts claims for fraud, breach of express warranty, breach of implied warranty, unjust enrichment, violations of the Magnuson-Moss Warranty Act and the consumer protection laws of the states of New York and California, on behalf of herself and all similarly situated purchasers of the Supplements.

### **PARTIES**

15.     Plaintiff Eva Marie Venti is a citizen of New York who resides in Buffalo, New York.  Ms. Venti has purchased NaturVet ArthriSoothe-Gold Chews and Glucosamine DS Plus Chews numerous times over the years for her dog.  Most recently, she purchased a 180-count bottle of NaturVet ArthriSoothe-Gold Chews in or about July 2021 from Amazon.com for approximately $40.23.  Prior to her purchases, Plaintiff carefully read the bottle's labeling, including the representations that "[g]lucosamine, MSM, Chondroitin and Green Lipped Mussel . . . support connective tissue, cartilage health, joint movement, and lubrication of joints." Defendant made additional representations on Amazon's website, including:  "PET SUPPLEMENTS FOR ENHANCED DOG JOINT MOVEMENT: Ensure that your

canine companion receives the nutrients he needs with these joint support dog supplements that include a healthy blend of wholesome ingredients that offer additional support for senior pets or dogs recovering from surgery or injuries." Plaintiff understood these statements to mean that the Supplements would effectively treat her dog's hip and joint pain and would support connective tissue and joint movement and relied on them in that she would not have purchased the Supplements at all, or would have only been willing to pay a substantially reduced price for the Supplements, had she known that these representations were false and misleading. Plaintiff gave her dog the Supplements as directed.

16.     Plaintiff also purchased Defendant's Glucosamine DS Plus Chews. Most recently, she purchased a bottle of Defendant's Glucosamine DS Plus Chews in or about October 2020 from Amazon.com for approximately $29.35.  Prior to her purchases, Plaintiff carefully read the bottle's labeling, including the representations that the Supplement "[s]upports connective tissue, cartilage health, and joint movement."  Plaintiff also reviewed Defendant's additional representations on Amazon prior to purchasing the Supplement, namely: "INGREDIENTS THAT WORK - Formulated with MSM, antioxidants, Chondroitin, and Glucosamine for dogs and cats to support connective tissue, cartilage health, joint movement, and lubrication of joints. Recommended for adult pets, including large breeds and overweight pets."  Plaintiff also reviewed Defendant's representation:  "OPTIMAL SUPPORT - Our Glucosamine DS Plus Level 2 Moderate Care joint support soft

chews are an excellent cat and dog joint supplement, providing incredible support for optimal joint flexibility and cartilage health."  Plaintiff understood these statements to mean that the Supplements would effectively support connective tissue, cartilage help and joint movement, and relied on them in that she would not have purchased the Supplements at all, or would have only been willing to pay a substantially reduced price for the Supplements, had she known that these representations were false and misleading.  Plaintiff gave her dog the Supplements as directed.

17.     Defendant Garmon Corporation is a California corporation with its principal place of business at 27461 Vía Industria, Temecula. CA 92590.  Garmon Corporation is the manufacturer and distributor of the Supplements.

## JURISDICTION AND VENUE

18.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

19.     This Court has personal jurisdiction over Defendant because Defendant is incorporated and has its principal place of business in this District, many of the acts and transactions giving rise to this action occurred in this District.

20.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant is incorporated and has its principal place of business in this District.

## **CLASS ALLEGATIONS**

21.    Plaintiff seeks to represent a class defined as all persons in the United States who purchased the Supplements (the "Class").  Excluded from the Class are persons who made such purchase for purpose of resale.

22.    Plaintiff also seeks to represent a subclass defined as all Class members who purchased the Supplements in New York (the "New York Subclass" or "Subclass").

23.    **Numerosity.**  The members of the Class and Subclass are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiff reasonably estimates that there are tens of thousands of members in the Class and Subclass.  Although the precise number of Class members is unknown to Plaintiff, the true number of Class members is known by Defendant and may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

24.    **Existence and predominance of common questions of law and fact.** Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to, whether Defendant's labeling, marketing and promotion of the Supplements is false and

misleading.

25.     **Typicality.**  Plaintiff's claims are typical of the claims of the other members of the Class in that, among other things, all Class and Subclass members were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein.  Further, there are no defenses available to Defendants that are unique to Plaintiff.

26.     **Adequacy of Representation.**  Plaintiff will fairly and adequately protect the interests of the Class and Subclass.  Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class and Subclass.  Furthermore, Plaintiff has no interests that are antagonistic to those of the Class or Subclass.

27.     **Superiority.**        A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class and Subclass members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant.  It would, thus, be virtually impossible for the Class or Subclass on an individual basis to obtain effective redress for the wrongs committed against them.  Furthermore, even if Class or Subclass members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all

parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

## <u>COUNT I</u>
### Deceptive Acts Or Practices, New York Gen. Bus. Law § 349

28.　Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

29.　Plaintiff brings this claim individually and on behalf of members of the New York Subclass against Defendant.

30.　By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by making false representations on the label of the Supplements and on Defendant's website and those of third-party vendors.

31.　The foregoing deceptive acts and practices were directed at consumers.

32.　The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the ability of the Supplements to positively impact joint health, connective tissue and cartilage in dogs.

33.　Plaintiff and members of the New York Subclass were injured as a result because (a) they would not have purchased the Supplements if they had known that they could not positively impact joint health in dogs, and (b) they overpaid for

the Supplements on account of the misrepresentations that they would support joint health, connective tissue and cartilage, as set forth above.

34.     On behalf of herself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, reasonable attorneys' fees and costs, and an order enjoining Defendant's deceptive conduct, and any other just and proper relief available under Section 349 of the New York General Business Law.

## COUNT II
### False Advertising, New York Gen. Bus. Law § 350

35.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

36.     Plaintiff brings this claim individually and on behalf of members of the New York Subclass against Defendant.

37.     Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of the New York General Business Law by misrepresenting that the Supplements "[s]upport[] connective tissue, cartilage health, and joint movement" and that "[g]lucosamine, MSM, Chondroitin and Green Lipped Mussel . . . support connective tissue, cartilage health, joint movement, and

---

CLASS ACTION COMPLAINT                                                          15

lubrication of joints."  Defendant made additional misrepresentations regarding the Supplements, as set forth above.

38.     The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

39.     This misrepresentation has resulted in consumer injury or harm to the public interest.

40.     As a result of this misrepresentation, Plaintiff and members of the New York Subclass have suffered economic injury because (a) they would not have purchased the Supplements if they had known that they could not positively impact joint health in dogs, and (b) they overpaid for the Supplements on account of the misrepresentations that the Supplements "[s]upport[] connective tissue, cartilage health, and joint movement" and that "[g]lucosamine, MSM, Chondroitin and Green Lipped Mussel . . . support connective tissue, cartilage health, joint movement, and lubrication of joints."

41.     On behalf of herself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs, and an order enjoining Defendant's deceptive conduct, and any other just and proper relief available under Section 350 of the New York General Business Law.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT III

**Breach of Express Warranty**

42.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

43.     Plaintiff brings this claim individually and on behalf of members of the Class and New York Subclass against Defendant.

44.     In connection with the sale of the Supplements, Defendant, as the designer, manufacturer, marketer, distributor, and/or seller issued written warranties by representing that the Supplements "[s]upport[] connective tissue, cartilage health, and joint movement" and that "[g]lucosamine, MSM, Chondroitin and Green Lipped Mussel . . . support connective tissue, cartilage health, joint movement, and lubrication of joints."  Defendant made additional express warranties, as set forth above, regarding the Supplements' impact on joint health, cartilage, and connective tissue.

45.     In fact, the Supplements do not conform to the above-referenced representations because they are ineffective.

46.     Plaintiff and the members of the proposed Class and the New York Subclass were injured as a direct and proximate result of Defendant's breach because (a) they would not have purchased the Supplements if they had known that they could not positively impact joint health in dogs, and (b) they overpaid for the Supplements on account of the misrepresentations that the Supplements "[s]upport[]

CLASS ACTION COMPLAINT                                                    17

connective tissue, cartilage health, and joint movement" and that "[g]lucosamine, MSM, Chondroitin and Green Lipped Mussel . . . support connective tissue, cartilage health, joint movement, and lubrication of joints."

47.    Plaintiff's counsel notified Defendant of her claims in a demand letter, sent via certified mail, on May 5, 2022.

## COUNT IV
### Fraud

48.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

49.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class and New York Subclass against Defendant.

50.    As discussed above, Defendant misrepresented on the Supplement's packaging that the Supplements "[s]upport[] connective tissue, cartilage health, and joint movement" and that "[g]lucosamine, MSM, Chondroitin and Green Lipped Mussel . . . support connective tissue, cartilage health, joint movement, and lubrication of joints."

51.    The false and misleading representations and omissions were made with knowledge of their falsehood.  Defendant is a top distributor of dog supplements in the United States that is undoubtedly aware of the studies finding that supplements with glucosamine and chondroitin are ineffective for joint health in dogs. Nonetheless, Defendant continues to sell its ineffective and worthless Supplements to unsuspecting consumers.

---

CLASS ACTION COMPLAINT                                                    18

52.     The false and misleading representations and omissions were made by Defendant, upon which Plaintiff and members of the proposed Class and New York Subclass reasonably and justifiably relied, and were intended to induce and actually induced Plaintiff and members of the proposed Class and New York Subclass to purchase the Supplements.

53.     The fraudulent actions of Defendant caused damage to Plaintiff and members of the proposed Class and New York Subclass, who are entitled to damages and other legal and equitable relief as a result.

## COUNT V
### Magnuson-Moss Warranty Act

54.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

55.     Plaintiff brings this case individually and on behalf of the members of the proposed Class and New York Subclass against Defendant.

56.     The Supplements are a consumer product as defined in 15 U.S.C. § 2301(1).

57.     Plaintiff and members of the Class and the New York Subclass are consumers as defined in 15 U.S.C. § 2301(3).

58.     Defendant is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

59.     In connection with the sale of the Supplements, Defendant issued written warranties as defined in 15 U.S.C. § 2301(6), which warranted that, *inter alia*, the Supplements "[s]upport[] connective tissue, cartilage health, and joint movement" and that "[g]lucosamine, MSM, Chondroitin and Green Lipped Mussel . . . support connective tissue, cartilage health, joint movement, and lubrication of joints."

60.     In fact, the Supplements are ineffective for their intended purpose and do not conform to this representation.

61.     By reason of Defendant's breach of warranty, Defendant violated the statutory rights due to Plaintiff and the members of the proposed Class and the New York Subclass pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, thereby damaging Plaintiff and the members of the Class and the New York Subclass.

62.     Plaintiff and the members of the Class and the New York Subclass were injured as a direct and proximate result of Defendant's violation because (a) they would not have purchased the Supplements if they had known that they were ineffective for their stated purposes, and (b) they overpaid for the Supplements on account of the misrepresentations.

63.     Plaintiff's counsel notified Defendant of her claims in a demand letter, sent via certified mail, on May 5, 2022.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT VI

**Unjust Enrichment**

64.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

65.     Plaintiff brings this case individually and on behalf of the members of the proposed Class and New York Subclass against Defendant.

66.     Plaintiff and Class members conferred a benefit in the form of monies paid on Defendant by purchasing the Supplements.

67.     Defendant voluntarily accepted and retained this benefit.

68.     Because this benefit was obtained unlawfully, namely by selling and accepting compensation for the worthless Supplements, it would be unjust and inequitable for the Defendant to retain it without paying the value thereof.

## COUNT VII

**Violation of Consumer Legal Remedies Act ("CLRA")**
**Civil Code §§ 1750, *et seq.***

69.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

70.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant for injunctive relief only.

71.     This cause of action is brought pursuant to California's Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 (the "CLRA").

72.     Plaintiff and members of the Classes are consumers who purchased the Supplements for personal, family, or household purposes.  Accordingly, Plaintiff and members of the Classes are "consumers," as the term is defined by Cal. Civ. Code § 1761(d).

73.     At all relevant times, Defendant's Supplements constituted "goods," as the term is defined by Cal. Civ. Code § 1761(a).

74.     At all relevant times, Defendant was a "person," as that term is defined in Cal. Civ. Code § 1761(c).

75.     At all relevant times, Plaintiff's purchases of Defendant's Supplements, and the purchases of other members of the Classes constituted "transactions," as that term is defined in Cal. Civ. Code § 1761(e).

76.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purposes of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

77.     The policies, acts, and practices described in this Complaint were intended to and did result in the sale of Defendant's Supplements to Plaintiff and members of the Classes.  Defendant's practices, acts, policies, and course of conduct violated the CLRA § 1750 *et seq.*, as described above.

78.     Defendant represented that its Products have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have in

violation of Cal. Civ. Code § 1770(a)(5) because Defendant represented, *inter alia*, that the Supplements "[s]upport[] connective tissue, cartilage health, and joint movement" and that "[g]lucosamine, MSM, Chondroitin and Green Lipped Mussel . . . support connective tissue, cartilage health, joint movement, and lubrication of joints."

79.    Defendant represented that its Products were of a particular standard, quality, and grade, when they were another, in violation of Cal. Civ. Code § 1770(7).

80.    Defendant violated Cal. Civ. Code §§ 1770(a)(5) and (a)(7) by representing that its Products were safe and effective for use as joint health supplements for dogs, when they in fact were not.

81.    Defendant represented that its Products were of a particular standard or quality when Defendant was aware that they were of another in violation of § 1770(a)(7) of the CLRA.

82.    Defendant advertised its Products with intent not to sell them as advertised in violation of § 1770(a)(9) of the CLRA.

83.    Plaintiff and members of the Classes suffered injuries caused by Defendant's misrepresentations because: (a) Plaintiff and members of the Classes would not have purchased the Products on the same terms if they had known the true facts; (b) Plaintiff and members of the Classes paid a premium price due to the mislabeling of Defendant's Products; and (c) Defendant's Products did not have the level of quality, effectiveness, or value as promised.

84.     Prior to the filing of this Complaint, a CLRA notice letter was served on Defendant which complies in all respects with California Civil Code § 1782(a).  On May 5, 2022, Plaintiff sent Defendant a letter via certified mail, return receipt requested, advising Defendant that they are in violation of the CLRA and must correct, repair, replace, or otherwise rectify the goods alleged to be in violation of the CLRA and must correct, replace or otherwise rectify the goods alleged to be in violation of § 1770.  Wherefore, Plaintiff seeks injunctive relief for this violation of the CLRA.

### COUNT VIII

**Violation of False Advertising Law ("FAL")**
**Business & Professions Code §§ 17500, *et seq.***

85.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

86.     Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

87.     California's FAL (Bus. & Prof. Code §§ 17500, *et seq.*) makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state…in any advertising device…or in any other manner or means whatever, including over the Internet, any statement, concerning…personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is

known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

88.    Throughout the Class Period, Defendant committed acts of false advertising, as defined by §§ 17500, by using false and misleading statements to promote the sale of the Supplements, as described above, including but not limited to, misrepresenting that the Supplements "[s]upport[] connective tissue, cartilage health, and joint movement" and that "[g]lucosamine, MSM, Chondroitin and Green Lipped Mussel . . . support connective tissue, cartilage health, joint movement, and lubrication of joints."

89.    Defendant knew or should have known, through the exercise of reasonable care that the statements were untrue and misleading.

90.    Defendant's actions in violation of §§ 17500 were false and misleading such that the general public is and was likely to be deceived.

91.    As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiff and members of the Classes have suffered injury and actual out-of-pocket losses because: (a) Plaintiff and members of the Classes would not have purchased the Supplements if they had known the true facts regarding the Supplements; (b) Plaintiff and members of the Class paid a price premium due to the misrepresentations about the Supplements; and (c) the Products did not have the promised quality, effectiveness, or value.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

92.     Plaintiff brings this action pursuant to § 17535 for injunctive relief to enjoin the practices described herein and to require Defendant to issue corrective and disclosures to consumers.  Plaintiff and the members of the Classes are therefore entitled to: (a) an order requiring Defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendant as a result of its deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs.

## COUNT IX

### Violation of Unfair Competition Law ("UCL")
### Business & Professions Code §§ 17200, *et seq.*

93.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

94.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

95.     Defendant is subject to the UCL, Bus. & Prof. Code § 17200, *et seq.* The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful conduct, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising…."  The UCL also provides for injunctive relief and restitution for violations.

96.     "By proscribing any unlawful business practice, § 17200 borrows violations of other laws and treats them as unlawful practices that the UCL makes independently actionable." *Cel-Tech Communications, Inc. v. Los Angeles Cellular*

CLASS ACTION COMPLAINT                                                    26

*Telephone Co.*, 20 Cal. 4th 163, 180 (1999) (citations and internal quotation marks omitted).

97.     Virtually any law or regulation—federal or state, statutory, or common law—can serve as a predicate for a UCL "unlawful" violation. *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1383 (2012).

98.     Defendant has violation the UCL's "unlawful prong" as a result of its violations of the CLRA and FAL, as well as by breaching implied warranties as described herein.

99.     Throughout the Class Period, Defendant committed acts of unfair competition, as defined by § 17200, by using false and misleading statements to promote the sale of the Supplements, as described above.

100.    Defendant's misrepresentations and other conduct, described herein, violated the "unfair prong" of the UCL because the conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendant's conduct is unfair in that the harm to Plaintiff and members of the Classes arising from Defendant's conduct outweighs the utility, if any, of those practices.

101.    Defendant's practices as described herein are of no benefit to consumers who are tricked into believing that the Supplements are fit for their purpose as joint health supplements for dogs.  Defendant's practice of injecting misinformation into

the marketplace about the capabilities of its Supplements is unethical and

unscrupulous, especially because consumers trust companies like Defendant to

provide accurate information about their products.  Taking advantage of that trust,

Defendant misrepresents the effectiveness and quality of its Supplements to increase

sales.  Consumers believe that Defendant is an authority on the effectiveness and

quality of dog supplements and therefore believe Defendant's representations that its

Supplements are effective for their intended use as joint health nutritional

supplements for dogs.

102.   Defendant's conduct described herein, violated the "fraudulent prong"

of the UCL by representing that the Supplements were effective for their intended

use as joint health supplements for dogs, when in fact they were not.

103.   Plaintiff and members of the Class are not sophisticated experts with

independent knowledge of the effectiveness of the Supplements, and they acted

reasonably when they purchased the Supplements based on their belief that

Defendant's representations were true.

104.   Defendant knew or should have known, through the exercise of

reasonable care, that its representations about the Products were untrue and

misleading.

105.   As a direct and proximate result of these acts, consumers have been and

are being harmed.  Plaintiff and members of the Classes have suffered injury and

actual out of pocket losses as a result of Defendant's unfair, unlawful, and fraudulent

business acts and practices because: (a) Plaintiff and members of the Classes would not have purchased the Supplements on the same terms if they had known the true facts regarding the safety and effectiveness of the Supplements; (b) Plaintiff and members of the Class paid a price premium due to the misrepresentations on Defendant's Supplements; and (c) Defendant's Supplements did not have the quality and effectiveness or value as promised.

106.   Pursuant to *California Business & Professions Code* § 17203, Plaintiff and members of the Classes are therefore entitled to: (a) an Order requiring Defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendant as a result of its deceptive practices; (c) interests at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)   For an order certifying the Class and Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class and Subclass;

(b)   For an order finding in favor of Plaintiff and the Class and Subclass on all counts asserted herein;

(c)   For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

(d)    For prejudgment interest on all amounts awarded;

(e)    For an order of restitution and all other forms of equitable monetary relief;

(f)    For injunctive relief as pleaded or as the Court may deem proper; and

(g)    For an order awarding Plaintiff and the Class and Subclass her reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated:  May 6, 2022

Respectfully Submitted,

**BURSOR & FISHER, P.A.**

By:   */s/ L. Timothy Fisher*

L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT

30

**<u>CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)</u>**

I, L. Timothy Fisher, declare as follows:

      1.    I am an attorney at law licensed to practice in the State of California and I am member of the bar of this Court.  I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiff in this action. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

      2.    The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in this District.

      3.    I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at Walnut Creek, California this 6th day of May, 2022.

*/s/ L. Timothy Fisher*
L. Timothy Fisher

CLASS ACTION COMPLAINT