**GIBBS & FUERST** LLP

41870 KALMIA STREET, SUITE 135
MURRIETA, CA 92562
TELEPHONE (951)816-3435
FACSIMILE (951)816-3436

Russell S. Fuerst, State Bar No. 135030
rfuerst@gibbsandfuerst.com
Kevin L. Borgen, State Bar No. 176766
kborgen@gibbsandfuerst.com

Attorneys for Defendant GARMON CORPORATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVA MARIE VENTI, on behalf of herself and all others similarly situated, )<br><br>Plaintiff(s), )<br><br>vs. )<br><br>GARMON CORPORATION, )<br><br>Defendants. ) | No.:  5:22-CV-782 JGB (SHKx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE GARMON CORPORATION'S MOTION TO DISMISS CLASS ACTION COMPLAINT**<br><br>DATE:   July 18, 2022<br>TIME:    9:00 a.m.<br>JUDGE:  Hon. Jesus G. Bernal<br>RIVERSIDE COURTROOM  1<br><br>Oral Argument Requested |

# **TABLE OF CONTENTS**

I.  STATEMENT OF CASE ....................................................... 1

II.  ARGUMENT ...................................................................... 5

    A.  The Complaint should be dismissed because it does not
        meet the standards of pleading under F.R.C.P. Rules 8,
        9, 10, or 12 ................................................................... 5

    B.  To the extent based on any product or representation
        other than those identified in Complaint ¶¶15 -16, every
        claim should be dismissed for lack of standing pursuant
        to Rule 12(b)(1) and pursuant to Rule 12(b)(6) for failure
        to state a claim .......................................................... 8

    C.  Venti's claims for injunctive relief should be dismissed
        for lack of standing pursuant to Rule 12(b)(1) ..................... 10

    D.  Count V ("Magnuson-Moss Warranty Act") should be
        dismissed because it does not state a cognizable claim
        under 15 U.S.C.S. § 2310 ........................................... 11

    E.  Counts III, V & VII should all be dismissed because
        Venti failed to provide timely notice of any product
        deficiency or nonconformity and because Venti
        has opted not to take advantage of Garmon's 100%
        Money Back Guarantee ............................................... 12

    F.  The entire Complaint should be dismissed because it
        does not plausibly allege the falsity of any Garmon
        representation .......................................................... 13

III.  CONCLUSION ................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

**<u>Federal Cases</u>**

Arora v. GNC Holdings, Inc.,
  2019 U.S. Dist. LEXIS 198723 (N.D. Cal. 11/15/2019) .......................... 8

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007) ................................................................................ 8

Bitton v. Gencor Nutrientes, Inc.,
  654 F. App'x 358 (9th Cir. 2016) .......................................................... 12

Chandler v. State Farm Mut. Auto. Ins. Co.,
  598 F.3d 1115 (9th Cir. 2010) .................................................................. 9

Chapman v. Pier 1 Imports (U.S.) Inc.,
  631 F.3d 939 (9th Cir. 2011). ................................................................ 10

Cohen v. Ainsworth Pet Nutrition, LLC,
  2021 U.S. Dist. LEXIS 15923, at *9 (C.D. Cal. 1/21/21). .................... 15

Destfino v. Reiswig,
  630 F.3d 952 (9th Cir. 2011) .................................................................... 8

Eckler v. Wal-Mart Stores, Inc.,
  2012 U.S. Dist. LEXIS 157132  (S.D. Cal. 11/1/12). ....................... 14,15

Fenerjian v. Nongshim Co.,
  72 F. Supp. 3d 1058 (N.D. Cal. 2014) ...................................................... 9

Gutierrez v. Johnson & Johnson Consumer Inc.,
  2021 U.S. Dist. LEXIS 40826 (S.D. Cal. 1/22/2021) ........................... 7,8

Imagenetix, Inc. v. Frutarom USA, Inc.,
  2017 U.S. Dist. LEXIS 41731 (S.D. Cal. 3/22/2017) ........................... 12

In re 5-Hour Energy Mktg. & Sales Practices Litig.,
  2014 U.S. Dist. LEXIS 149732 (C.D. Cal. 9/4/2014) ...................... 10,12

ii

In re Ferrero Litig.,
   794 F. Supp. 2d 1107 (S.D. Cal. 2011) .................................................. 9

In re Gilead Scis. Sec. Litig.,
   536 F.3d 1049 (9th Cir. 2008) ...................................................... 5

Kearns v. Ford Motor Co.,
   567 F.3d 1120 (9th Cir. 2009) ................................................. 6,7

Khoja v. Orexigen Therapeutics, Inc.,
   899 F.3d 988 (9th Cir. 2018) ..................................................... 5

Khrapunov v. Prosyankin,
   931 F.3d 922 (9th Cir. 2019) .................................................. 17

Kroessler v. CVS Health Corp.,
   977 F.3d 803 (9th Cir. 2020) .................................................. 17

Kwan v. SanMedica Int'l,
   854 F.3d 1088, 1096-97 (9th Cir. 2017) ................................... 13

Landers v. Quality Communs., Inc.,
   771 F.3d 638 (9th Cir. 2015) .................................................... 6

Liou v. Organifi, LLC,
   491 F. Supp. 3d 740 (S.D. Cal. 2020) .................................. 7,13

Lytle v. Nutramax Labs.,
   2019 U.S. Dist. LEXIS 228123 (C.D. Cal. 9/26/2019) .......... 11,13,16,17

Manzarek v. St. Paul Fire & Marine Ins. Co.,
   519 F.3d 1025 (9th Cir. 2008) ................................................... 5

McCrary v. Elations Co., LLC,
   2013 U.S. Dist. LEXIS 173591 (C.D. Cal. 4/24/13) ........................... 16

McCrary v. Elations Co., LLC,
   2013 U.S. Dist. LEXIS 173592 (C.D. Cal. 7/12/2013) ......................... 8

iii

Murray v. Elations Co., LLC,
    2014 U.S. Dist. LEXIS 107721 (S.D. Cal. 8/4/2014) ................... 9,14,16

Otto v. Abbott Labs., Inc.,
    2013 U.S. Dist. LEXIS 53287 (C.D. Cal. 3/15/13) ............................... 14

Padilla v. Costco Wholesale Corp.,
    2013 U.S. Dist. LEXIS 7990 (N.D. Ill. 1/16/13) .................................... 16

Rozario v. Richards,
    2015 U.S. Dist. LEXIS 190466 (C.D. Cal. 4/22/2015) ............................ 9

Schultz v. Cnty. of San Joaquin,
    2022 U.S. Dist. LEXIS 4046 (E.D. Cal. 1/6/2022) ................................. 7

Sims v. Campbell Soup Co.,
    2018 U.S. Dist. LEXIS 222535 (C.D. Cal. 9/24/ 2018) ..................... 8,10

Toback v. GNC Holdings, Inc.,
    2013 U.S. Dist. LEXIS 131135 (S.D. Fla. 9/13/13) ............................... 15

Vess v. Ciba-Geigy Corp. USA,
    317 F.3d 1097 (9th Cir. 2003) ............................................................. 6,7

Vigil v. Gen. Nutrition Corp.,
    2015 U.S. Dist. LEXIS 163115 (S.D. Cal. 12/4/15) ............................. 13

Weiland v. Palm Beach Cnty. Sheriff's Office,
    792 F.3d 1313 (11th Cir. 2015) ............................................................. 7

Wilson v. Frito-Lay N. Am.,
    961 F. Supp. 2d 1134 (N.D. Cal. 2013) ................................................ 8,9

Yamasaki v. Zicam LLC,
    2021 U.S. Dist. LEXIS 205494 (N.D. Cal. Oct. 25, 2021) .............. 10,11

iv

1

# **<u>STATUTES AND RULES</u>**

2

3

Cal. Civil Code §1782 ............................................................................ 12

Cal. Com. Code § 2607(3)(A) ................................................................ 12

F.R.C.P. Rule 8(a)(2) .......................................................................... 5,6,7

F.R.C.P. Rule 9(b) ......................................................................... 6,7,8,10

F.R.C.P. Rule 10(b) ................................................................................ 7

F.R.C.P. Rule 11(b)(3) ........................................................................... 5

F.R.C.P.  Rule 12(b)(1 & 6) ............................................................. 8,9,10

15 U.S.C. § 2310(d)(3) ......................................................................... 11

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.  STATEMENT OF CASE

This is a motion to dismiss the Complaint of plaintiff Eva Marie Venti, who claims she and a putative class were wronged by representations regarding 11 different pet supplement products of the Garmon Corporation.

Venti purchased 2 of those 11 products, she "carefully read" the labels for those 2 products, and used those 2 products "as directed."[1]  Because Venti "carefully read" the product labels, she saw this on each label: "**Cautions**: if animal's condition worsens or does not improve, stop product administration and consult your veterinarian….**100% MONEY BACK GUARANTEE.**"[2]

There is no allegation that the products harmed or failed to benefit Venti's own dog.  Rather, Venti continued to use Garmon products "as directed" "numerous times over the years," indicating that her dog's condition did not worsen or fail to improve.  That Venti continued to purchase Garmon products "numerous times over the years" instead of taking advantage of the money back guarantee indicates Venti had not been personally dissatisfied with the 2 Garmon products she purchased.

The Complaint indicates that Venti now believes she was wronged because that is what her legal counsel told her. [Doc. 1 at 1:3-8].  Through the Complaint, Venti's counsel propose that Garmon's products "are a sham" and that Garmon product representations are false, wronging and threatening future harm to Venti and a nationwide class of consumers.

In evaluating this motion to dismiss, the Court can and should minimize its burden by keeping in mind what is actually relevant (what Venti has standing to address): the two Garmon products she actually purchased and the representations she allegedly relied upon- in other words, what is alleged in Complaint ¶¶15-16.

---

[1] Complaint (also "Doc.1") at 1:3-7, ¶¶15-16.
[2] Request for Judicial Notice ("RJN")1 &Ex. 1.

1

In effort to support this nationwide class action lawsuit, Venti's Complaint employs the very vice it purportedly seeks to remedy: deception.  First, the Complaint misportrays all of Garmon's products as being the same and the same as any product containing glucosamine and chondroitin.  Second, the Complaint lists Garmon representations about different products from various sources along with mischaracterizations of Garmon representations.  Third, the Complaint purports to debunk mischaracterizations of Garmon representations with mischaracterizations of "Decades of studies and peer-reviewed tests."  In sum, Venti's Complaint plausibly shows no basis for relief.

With regard to first step of the lawsuit strategy, Complaint ¶4 alleges each product contains the same key ingredients.  That is not accurate.  A review of the product labels [RJN Ex. 1], as summarized in the table below, show there is variance in ingredients, amounts of ingredients, and product format.

Complaint ¶7 alleges glucosamine hcl is "The main active ingredient…" "Main active ingredient" is a characterization by Venti not a representation by Garmon.  The product labels show that glucosamine hcl is the biggest ingredient by weight in some products, other products have equal amounts of methylsulfonylmethane and glucosamine hcl, and one product has glucosamine hcl as the second biggest ingredient by weight. To the extent Venti uses "main" to mean chief in importance, there is no alleged fact to support the conclusion.

Complaint ¶8 alleges "The second active ingredient in the Supplements is chondroitin sulfate…"  Chondroitin sulfate is the biggest ingredient by weight in one product, and it is not the first or second biggest ingredient by weight in any other product.

As shown in the following table, every Garmon product identified in the Complaint has several active ingredients other than glucosamine hcl and chondroitin sulfate.

2

| PRODUCT | ACTIVE INGREDIENTS |
|---------|--------------------|
| NaturVet Glucosamine DS Plus™ Soft Chews | Active Ingredients per 2 Soft Chews: Glucosamine HCl (Shellfish Source) 500 mg; Methylsulfonylmethane (MSM) 500 mg; Yucca schidigera 90 mg; Chondroitin Sulfate (Porcine Source) 60 mg; Calcium Ascorbate (Vitamin C) 58 mg; DL-alpha-tocopheryl acetate (Vitamin E) 60 IU; Omega-3 Fatty Acids (Fish Oil & Flaxseed) 1,800 mcg; Omega-6 Fatty Acids (Fish Oil & Flaxseed) 946 mcg |
| NaturVet Glucosamine DS™ Soft Chews | Active Ingredients per 2 Soft Chews: Glucosamine HCl (Shellfish Source) 500 mg; Yucca schidigera 90 mg; Chondroitin Sulfate (Porcine Source) 60 mg; Calcium Ascorbate (Vitamin C) 58 mg; DL-alpha-tocopheryl acetate (Vitamin E) 60 IU; Omega-3 Fatty Acid (Fish Oil & Flaxseed) 1800 mcg; Omega-6 Fatty Acid (Fish Oil & Flaxseed) 946 mcg |
| NaturVet Glucosamine DS™ Tabs | Active Ingredients per 3 gram Tablet: Glucosamine HCl (Shellfish Source) 500 mg; Yucca schidigera 90 mg; Chondroitin Sulfate (Porcine Source) 60 mg; Calcium Ascorbate (Vitamin C) 58 mg; DL-alpha-tocopheryl acetate (Vitamin E) 60 IU; Omega-3 Fatty Acids (Fish Oil & Flaxseed) 1,800 mcg; Omega-6 Fatty Acids (Fish Oil & Flaxseed) 946 mcg (Above ingredients are time released) |
| NaturVet Glucosamine DS Plus™ Tabs | Active Ingredients per 3 gram Tablet: Glucosamine HCl (Shellfish Source) 500 mg; Methylsulfonylmethane (MSM) 500 mg; Yucca schidigera 90 mg Chondroitin Sulfate (Porcine Source) 60 mg; Calcium Ascorbate (Vitamin C) 58 mg; DL-alpha-tocopheryl acetate (Vitamin E) 60 IU; Omega-3 Fatty Acids (Flaxseed & Fish Oil) 1,800 mcg; Omega-6 Fatty Acids (Flaxseed & Fish Oil) 946 mcg (Above ingredients time released.) |
| NaturVet Glucosamine DS™ Liquid | Active Ingredients per teaspoon: Glucosamine HCl (Shellfish Source) 500 mg; Boswellia serrata 90 mg; Yucca schidigera Extract 90 mg; Chondroitin Sulfate (Porcine Source) 60 mg; D-alpha-tocopheryl acetate (Vitamin E) 3.3 IU |
| NaturVet ArthriSoothe-GOLD® Advanced Care Soft Chews | Active Ingredients per 3 Soft Chews: Glucosamine HCl (*Shellfish Source*) 500 mg; Methylsulfonylmethane (*MSM*) 500 mg; Chondroitin Sulfate (*Porcine Source*) 200 mg; Green Lipped Mussel (*Perna Canaliculus*) 200 mg; Proprietary Enzyme Blend 130 mg (alpha-Amylase, Lipase, Cellulase, Protease, Bacillus coagulans, and Fructooligosaccharides); Boswellia serrata 90 mg; Yucca schidigera 90 mg; Calcium Ascorbate (*Vitamin C*) 60 mg; Zinc 7 mg; Hyaluronic Acid 5 mg; DL-alpha-tocopheryl acetate (*Vitamin E*) 60 IU |
| NaturVet ArthriSoothe-GOLD® Advanced Care Liquid | Active Ingredients per 1-½ Teaspoons: Glucosamine HCl (Shellfish Source) 750 mg; Methylsulfonylmethane (MSM) 750 mg; Chondroitin Sulfate (Porcine Source) 180 mg; Boswellia serrata 135 mg; Yucca schidigera Extract 135 mg; Hyaluronic Acid 5 mg; D-alpha-tocopheryl acetate (Vitamin E) 5 IU |
| NaturVet ArthriSoothe-GOLD® Advanced Care Chewable Tablets | Active Ingredients per 5 gram Tablet: Glucosamine HCl (*Shellfish Source*) 500 mg; Methylsulfonylmethane (*MSM*) 500 mg; Chondroitin Sulfate (*Porcine Source*) 200 mg; Green Lipped Mussel (*Perna canaliculus*) 200 mg; Proprietary Enzyme Blend 130 mg (*alpha-Amylase, Lipase, Cellulase, Protease, Bacillus coagulans, and Fructooligosaccharides*); Boswellia serrata 90 mg; Yucca schidigera 90 mg; Calcium Ascorbate (*Vitamin C*) 60 mg; Zinc 7 mg; Hyaluronic Acid 5 mg; DL-alpha-tocopheryl acetate (*Vitamin E*) 60 IU (*Above ingredients are time released.*) |
| NaturVet ArthriSoothe® Hip & Joint Formula Tablets | Active Ingredients per 550mg tablet: Chondroitin Sulfate (*Porcine Source*) 116mg; Glucosamine HCl (*Shellfish Source*) 90mg; Boswellia serrata 28mg; Calcium Ascorbate (*Vitamin C*) 22mg; Yucca schidigera 17mg; Green Lipped Mussel (*Perna canaliculus*) 16mg; dl-alpha Tocopheryl Acetate (*Vitamin E*) 29IU; Omega-3 Fatty Acids 700mcg; Omega-6 Fatty Acids 370mcg |
| NaturVet Hip & Joint Plus Soft Chew Bag | Active Ingredients per 2 Soft Chews: Glucosamine HCl (Shellfish Digest) 250 mg; Methylsulfonylmethane (MSM) 250 mg; Calcium Ascorbate (Vitamin C) 112 mg; Omega-3 (Fish Oil, Lecithin & Flaxseed) 100 mg; Chondroitin Sulfate (Porcine Source) 50 mg; Yucca schidigera 50 mg; Omega-6 (Lecithin & Flaxseed) 25 mg; DL-alpha-tocopheryl acetate (Vitamin E) 50 IU |
| NaturVet Joint Health Level 3 Powder | Active Ingredients per 2 Teaspoons: Glucosamine HCl (Shellfish Digest) 500 mg; Methylsulfonylmethane (MSM) 500 mg; Green Lipped Mussel 200 mg; Chondroitin Sulfate (Porcine Source) 200 mg; Proprietary Enzyme & Probiotic Blend 137 mg; Yucca schidigera 90 mg; Boswellia serrata 90 mg; Calcium Ascorbate (Vitamin C) 60 mg; Zinc 7 mg; Hyaluronic Acid 5 mg; DL-alpha-tocopheryl acetate (Vitamin E) 60 IU |

3

With regard to the second step of the lawsuit strategy, Garmon's representations are what the Complaint quotes or shows in label images, and there are different representations regarding different products.  Except in characterization or suggestion, the Complaint does not allege any actual Garmon representation that any Garmon product "would effectively treat…hip and joint pain" or would effectively treat osteoarthritis or any other disease.

On to the third step of the lawsuit strategy, from the "Decades of studies and peer-reviewed tests" supposedly showing Garmon products to be a sham, Venti's counsel found two studies[3] and then also came up with two "other publications."[4] As discussed in more detail below, Venti's sources do not debunk any Garmon representation.  None of Venti's sources evaluate any Garmon product or formulation of ingredients, and all of Venti's sources indicate that supplement efficacy varies by product and by formulation of ingredients.  Venti's sources indicate that research conflicts as to whether glucosamine and chondroitin alone (or CosequinDS) are an effective treatment for osteoarthritis, none of Venti's sources purport to disprove the proposition that such supplements may be beneficial in treating osteoarthritis, and all of Venti's sources indicate more research on the subject is needed.  Two of Venti's sources cite uncontradicted research studies finding that three of the several ingredients found in the Garmon products Venti purchased were beneficial in treating osteoarthritis.

More to the point of Garmon's actual representations, Venti's sources explain how glucosamine and chondroitin each do support general joint health.

---

[3] The Moreau study [RJN Ex. 3, referenced at Doc.1 ¶10 & n.5] and the Scott study [RJN Ex.4, referenced at Doc. 1 ¶11 & n.6]).
[4] Plumb's Veterinary Drug Handbook [RJN Ex.5, referenced at Doc.1 ¶12] and a 2010 article from the Banfield Journal [RJN Ex. 6, referenced at Doc. 1 ¶12].

4

Venti's Complaint does not properly allege any viable claim, and the Complaint should therefore be dismissed.  Perhaps also the folks pushing this lawsuit purportedly for the sake of honesty should be required to answer to a similar standard of honesty pursuant to F.R.C.P. Rule 11(b)(3).

## II.  ARGUMENT

**A.**   **The Complaint should be dismissed because it does not meet the standards of pleading under F.R.C.P. Rules 8, 9, 10, or 12.**

"When ruling on a motion to dismiss, we may 'generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.' " Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1030-31 (9th Cir. 2008).  The Court must accept as true "all factual allegations in the complaint" and "construe the pleadings in the light most favorable to the nonmoving party." Manzarek, 519 F.3d at 1031. This presumption does not extend to "allegations that contradict matters properly subject to judicial notice," conclusory allegations, "unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008).

Garmon has asked the Court to take judicial notice of a number of materials, most importantly the product labels and the four sources Venti's Complaint contends shows the falsity of Garmon representations.  Under the incorporation-by-reference doctrine, these materials (the product labels and Venti's sources) should be treated "as though they are a part of the complaint itself." Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1002 (9th Cir. 2018).  This doctrine prevents a plaintiff from avoiding dismissal by mischaracterizing or omitting relevant information from materials advanced to support the plaintiff's claims.  Id.

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that each claim in a pleading be supported by "a short and plain statement of the

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE GARMON CORPORATION'S MOTION TO DISMISS CLASS ACTION COMPLAINT

claim showing that the pleader is entitled to relief . . ."…[T]he Supreme Court clarified in *Twombly* that to satisfy Rule 8(a)(2), a complaint must contain sufficient factual content "to state a claim to relief that is plausible on its face. . . ." 550 U.S. at 570. Under *Twombly*, a complaint that offers "labels and conclusions, . . . a formulaic recitation of the elements of a cause of action[,]" or "naked assertion[s]" devoid of "further factual enhancement" will not suffice. *Id*. at 555, 557….In keeping with *Twombly*, the Supreme Court held in *Iqbal* that "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. …In evaluating whether a complaint states a plausible claim for relief, we rely on "judicial experience and common sense" to determine whether the factual allegations, which are assumed to be true, "plausibly give rise to an entitlement to relief." *Id*. at 679.

Landers v. Quality Communs., Inc., 771 F.3d 638, 640-641 (9th Cir. 2015).

Every count in Venti's Complaint sounds in fraud[5] and is therefore properly subject to the particularity requirement of Rule 9(b).[6]  Rule 9(b) requires Venti to identify each specific product representations she relied upon in deciding to

---

[5] Every Count in the Complaint is based on the same factual allegations that Garmon knowingly made "deceptive", "false and misleading" statements to sell "sham" supplements.  See Doc. 1 at ¶¶9, 13, 24 (alleging that common questions of law and fact predominate, including "whether Defendant's labeling, marketing, and promotion…is false and misleading."), ¶¶ 28, 30-33, 34 (asking for treble damages, which are available only for willful and knowing violations [New York General Business Law §349(h)]), ¶¶ 35, 37-40, 41 (requesting treble damages available only for willful and knowing violations [§ 349(h)]), ¶¶ 42, 48-52, 54, 64, 68, 69, 76-77, 82, 85, 87-90, 93, 96, 98, 100, 101, 102 ("Defendant's conduct…violated the 'fraudulent prong'…"), 105 ("…Defendant's…fraudulent conduct…").

[6] See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103-04 (9th Cir. 2003)("In cases where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct….In that event, the claim is said to be "grounded in fraud" or to "sound in fraud," and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)."); Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009).

6

purchase a particular Garmon product.[7]  Rule 9(b) also requires Venti's Complaint to point to direct evidence specifically showing why each specific product representation is provably false.[8]

Rule 10(b) states in part: "If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense."

In sum, following Rules 8(a)(2), 9(b), and 10(b), for each cause of action (meaning here each separate occurrence or transaction for which relief is requested, regardless of legal theory), Venti should have alleged in specific and straightforward fashion that she bought a particular product because Garmon said "X," and that she was wronged because a particular research study or similar source established "Not X."

Venti has instead employed a shotgun tactic, mixing and conflating different subjects, conclusions, factual allegations, and mischaracterizations to create a Complaint that is unreasonably difficult to follow and address.[9]  Neither Garmon nor this Court should have to sort out 30 jumbled pages (and documents referenced therein) to figure out whether Venti has standing for herself and a nationwide class

---

[7] Gutierrez v. Johnson & Johnson Consumer Inc., 2021 U.S. Dist. LEXIS 40826 at *12-14 (S.D. Cal. 1/22/2021); Kearns, 567 F.3d at 1125- 1126.

[8] See, e.g.  Liou v. Organifi, LLC, 491 F. Supp. 3d 740, 751 (S.D. Cal. 2020); see also Vess, 317 F.3d at 1106 ("The plaintiff must set forth what is false or misleading about a statement, and why it is false.").

[9] See, e.g. Weiland v. Palm Beach Cnty. Sheriff's Office, 792 F.3d 1313, 1321-23 (11th Cir. 2015) (Describing improper shotgun pleading tactics: "The next most common type… [is] replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief."); Schultz v. Cnty. of San Joaquin, 2022 U.S. Dist. LEXIS 4046, at *8 (E.D. Cal. 1/6/2022)

7

or any viable claim with regard to 11 different products and some uncertain number of product representations under nine different legal theories.

This was Venti's job, and her failure to comply with pleading standards warrants not indulgence but dismissal, "lest a plaintiff with "'a largely groundless claim'" be allowed to "'take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value.'" [10]

## B. To the extent based on any product or representation other than those identified in Complaint ¶¶15 -16, every claim should be dismissed for lack of standing pursuant to Rule 12(b)(1) and pursuant to Rule 12(b)(6) for failure to state a claim.

Injury and causation are elements of every theory alleged in the Complaint, as well as elements a plaintiff must allege to establish standing.[11]  The failure to

---

[10] Sims v. Campbell Soup Co., 2018 U.S. Dist. LEXIS 222535, at *24-25 (C.D. Cal. 9/24/2018) quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 558 (2007); Wilson v. Frito-Lay N. Am., 961 F. Supp. 2d 1134, 1141 (N.D. Cal. 2013)("Plaintiffs take no time to explain how each of the eighty-five new Products are actionably mislabeled, and the Court is not inclined to pore over each ingredient list and guess."); Gutierrez, 2021 U.S. Dist. LEXIS 40826 at *12-14 ("Apart from a few exceptions, Plaintiffs do not allege the specific content of the advertisement they viewed. [cite] Instead, they only provide their own interpretation of the advertisements….Neither of these claims—and others like it in the FiAC [cite] —identify *which specific advertisement* Plaintiffs relied on or *what the advertisement explicitly said*. Merely alleging that the advertisements stated that the Talcum Products were "pure," "safe," [cite] or that they would keep you "fresh" and "odor free" [cite] without identifying the particular advertisement that Plaintiffs viewed does not satisfy Rule 9(b)."); see also Destfino v. Reiswig, 630 F.3d 952, 958 (9th Cir. 2011) (Affirming dismissal of shotgun complaint with prejudice because the district court "found the pleadings would 'lead to broad discovery and other pretrial problems,' and 'create an undue burden on the Court.'").

[11] See, e.g.  Arora v. GNC Holdings, Inc., 2019 U.S. Dist. LEXIS 198723 at *17-18 (N.D. Cal. 11/15/2019); McCrary v. Elations Co., LLC, 2013 U.S. Dist. LEXIS 173592 at *17-21 (C.D. Cal. 7/12/2013); Gutierrez, 2021 U.S. Dist. LEXIS 40826 at *12-14.

8

properly allege facts plausibly showing these elements warrants dismissal under Rule 12(b)(6) or 12(b)(1).[12]

Venti does not have a viable claim or standing with regard to representations she did not actually review and rely upon or with regard to different products she did not purchase. [13]

Venti's Complaint proposes claims based on 11 Garmon products and various representations on these products' respective labels, respective pages at Naturvet.com, and respective pages at Amazon.com.  However, the Complaint alleges Venti actually only purchased the two products, and reviewed only the two associated product labels and Amazon.com statements, referenced in Complaint ¶¶ 15&16.

The Complaint suggests in conclusory fashion that all 11 identified Garmon products are essentially the same and the subject of essentially the same representations, but the Complaint lacks facts detailed or plausible enough to show standing, injury, or causation with regard to anything other than the two products and related representations alleged in Complaint ¶¶ 15-16.[14]

---

[12] Chandler v. State Farm Mut. Auto. Ins. Co., 598 F.3d 1115, 1121-22 (9th Cir. 2010) (12(b)(1) dismissal for failure to allege standing); Rozario v. Richards, 2015 U.S. Dist. LEXIS 190466 at *8 & *18 (C.D. Cal. 4/22/2015) (12(b)(6) dismissal for failure to allege injury caused by reliance on representation).

[13] See, e.g. Murray v. Elations Co., LLC, 2014 U.S. Dist. LEXIS 107721 at *31-32 (S.D. Cal. 8/4/2014); In re Ferrero Litig., 794 F. Supp. 2d 1107, 1111-12 (S.D. Cal. 2011); Fenerjian v. Nongshim Co., 72 F. Supp. 3d 1058, 1085 (N.D. Cal. 2014).

[14] See, e.g. Wilson, 961 F. Supp. 2d at 1142 ("The Court will not assume that each of these subtly different Products is like all the others. To meet the plausibility standard of Rule 8, Plaintiffs have to say more, especially when they are asserting standing as to Products they did not purchase —otherwise their pleadings amount to unacceptably bare legal conclusions. Iqbal, 556 U.S. at 663; Twombly 550 U.S. at 570. Plaintiffs' SAC's allegations about the Non-Purchased Products are not detailed or plausible enough to survive a motion to dismiss. [¶] Plaintiffs' boilerplate claims as to the Non-Purchased Products are therefore DISMISSED.");

The 11 Garmon products are not the same; the products all have different ingredient formulations and/or mechanisms of delivery, and the products representations vary. [RJN Ex. 1]. As discussed below, all four of Venti's sources indicate that different products, different dosages, and different ingredients lead to different results.

Therefore, to the extent based on any product or representation other than those identified Complaint ¶¶15 -16, every claim should be dismissed for lack of standing and failure to state a claim.

## C.  Venti's claims for injunctive relief should be dismissed for lack of standing pursuant to Rule 12(b)(1).

To establish standing to seek injunctive relief, Venti must allege facts plausibly showing a real and immediate threat she will be wronged again in the same way.[15]

The Complaint indicates Venti would not have purchased Garmon products if she had then been aware of the "sham," and now she has been informed about

---

Sims, 2018 U.S. Dist. LEXIS 222535, at *11-12 ("The fact that Plaintiff has pointed to a statement on Defendants' website and later made a general allegation that "she would not have purchased the Product in the absence of Defendants' misrepresentations and omissions" is not enough to give rise to a plausible inference that Plaintiff actually saw the statement and relied on it in deciding to purchase V8 Splash. See Johns, 2010 U.S. Dist. LEXIS 10926, 2010 WL 476688, at *5 (finding that a plaintiff lacked standing to bring a claim based on advertisements that he did not rely on); see also 5-Hour ENERGY, 2014 U.S. Dist. LEXIS 149732, 2014 WL 5311272, at *16-17 (finding that plaintiffs did not satisfy the Rule 9(b) particularity requirement when they did not allege that they had actually seen the misleading advertisements). Accordingly, Plaintiff's claims relating to the antioxidant advertising on Defendants' website are DISMISSED for lack of standing.").

[15] Yamasaki v. Zicam LLC, 2021 U.S. Dist. LEXIS 205494 at *9 - *11 (N.D. Cal. Oct. 25, 2021) citing Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 946 (9th Cir. 2011).

10

the glucosamine/chondroitin "sham" and that Garmon's representations are "false."[16]   Those allegations do not plausibly show a real or immediate threat Venti will again supposedly get re-duped into purchasing these "sham" products.

Venti's claims for injunctive relief should therefore be dismissed for lack of standing.[17]

**D.**   **Count V ("Magnuson-Moss Warranty Act") should be dismissed because it does not state a cognizable claim under 15 U.S.C.S. § 2310.**

15 U.S.C.S. § 2310 (d)(3) states in pertinent part:

> No claim shall be cognizable in a suit brought under paragraph (1)(B) of this subsection [referring to claims in U.S. District Court] —…
>  (B) if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit; or
> (C) if the action is brought as a class action, and the number of named plaintiffs is less than one hundred.

The putative class Magnuson-Moss Warranty Act claim is not cognizable because there is only one named plaintiff. §2310(d)(3)(C).  Venti's individual claim is not cognizable because she has not alleged facts demonstrating her amount in controversy is §50,000 or more. §2310(d)(3)(B).

Count V should therefore be dismissed.

---

[16] Doc. 1 at 10:7-9; 11:4-9; 1:3-5; ¶9, ¶12.

[17] See, e.g. Lytle v. Nutramax Labs., 2019 U.S. Dist. LEXIS 228123 at *17-18 (C.D. Cal. 9/26/2019) (Dismissing claim for injunctive relief: "A plaintiff alleging false or misleading advertising has standing to seek injunctive relief if she plausibly alleges that "she will be unable to rely on the product's advertising or labeling in the future, although she would like to."… But they have not pled any facts showing that they would like to."); Yamasaki, 2021 U.S. Dist. LEXIS 205494 at *10-11("However, Plaintiff does not explain how she will be harmed again….Plaintiff has not alleged that she faces an imminent or actual threat of future harm caused by Defendant's false advertising. The Court therefore GRANTS the motion on this basis.").

**E.**      **Counts III ,V & VII should all be dismissed because Venti failed to provide timely notice of any product deficiency or nonconformity and because Venti has opted not to take advantage of Garmon's 100% Money Back Guarantee.**

Every Garmon product label states an express warranty: "100% MONEY BACK GUARANTEE."  The Complaint alleges that Venti gave Garmon notice of her claims via the letter referenced in Complaint ¶¶ 47 & 63, a letter that was actually postmarked in New York on March 6, 2022, the same day this lawsuit was filed. [RJN 2].

The alleged notice of a Garmon product deficiency mailed the same day this lawsuit was filed did not provide the 30 days' notice required for a CLRA claim (Count VII)[18] and does not plausibly state a claim for breach of express warranty (Count III)[19] or under the Magnuson-Moss Warranty Act (Count V).[20]  There is no allegation that Venti sought to take advantage Garmon's 100% Money Back Guarantee, let alone that Garmon breached that guarantee.

---

[18] See Civil Code §1782(a) (requiring that a consumer give notice and request relief at least 30 days prior to filing suit); §1782(b) ("No action for damages may be maintained under Section 1780 if an appropriate correction or other remedy is given, or agreed to be given within a reasonable time, to the consumer within 30 days after receipt of the notice."); see also Bitton v. Gencor Nutrientes, Inc., 654 F. App'x 358, 362 (9th Cir. 2016) (dismissing claim filed without requisite notice).
[19] Imagenetix, Inc. v. Frutarom USA, Inc., 2017 U.S. Dist. LEXIS 41731 at *17-18 (S.D. Cal. 3/22/2017) ("In California, a plaintiff alleging a breach of express warranty must also provide the defendant with pre-suit notice of the breach."); Cal. Com. Code § 2607(3)(A) ("The buyer must, within a reasonable time after he or she discovers or should have discovered any breach, notify the seller of breach or be barred from any remedy.").
[20] In re 5-Hour Energy Mktg. & Sales Practices Litig., 2014 U.S. Dist. LEXIS 149732, at *55-56 (C.D. Cal. 9/4/2014) ("The Magnuson-Moss Act allows for suits to enforce the terms of express or implied warranties, but generally 'calls for the application of state written and implied warranty law.' See 15 U.S.C. § 2301… As a result, 'claims under the Magnuson-Moss Act stand or fall with [plaintiffs'] express and implied warranty claims under state law.'").

12

Counts III, V & VII should therefore be dismissed, and these claims should be dismissed with prejudice because Garmon promptly responded to Venti's untimely notice by offering to honor its guarantee and because Garmon reiterates that offer to Venti again here. [Ex.2 to Borgen Dec.].

**F.**    **The entire Complaint should be dismissed because it does not plausibly allege the falsity of any Garmon representation.**

The Complaint proposes that Garmon representations are false. This theory of relief requires the allegation of facts that plausibly show each Garmon representation has actually been disproved; a cause of action based on this theory is not stated by alleging facts (or citing sources) indicating a representation is unsubstantiated.[21]

As support for the proposition that Garmon representations are false, the Complaint points to two studies and two "other publications." [Doc. 1 ¶¶9-12]. To plausibly demonstrate falsity with a study or the like, as this Court summed it up: "[A] study's conclusion must directly address the [alleged] misrepresentation it is cited to debunk."[22]

_____

[21] Liou, 491 F. Supp. 3d at 750-51 ("In the false advertising context, an advertising claim is false if it has 'actually been disproved,' that is, if the plaintiff can point to evidence that directly conflicts with the claim. [cite] By contrast, an advertising claim that merely lacks evidentiary support is said to be unsubstantiated….Here, Plaintiff argues that the FAC identifies a series of specific statements that are allegedly provably false and misleading… However, these claims would require Plaintiff to point to direct evidence specifically showing why each of the twenty identified Benefit Statements are provably false, which Plaintiff has not done here."); see also Kwan v. SanMedica Int'l, 854 F.3d 1088, 1096-97 (9th Cir. 2017)("Since California law does not provide a private cause of action for claims that advertising lacks substantiation, the failure to allege specific facts pointing to actual falsehood constitutes a fatal flaw.").

[22] Lytle v. Nutramax Labs., 2019 U.S. Dist. LEXIS 228123 at *16 (C.D. Cal. 9/26/19); see also Vigil v. Gen. Nutrition Corp., 2015 U.S. Dist. LEXIS 163115 at

13

The proper plausibility analysis, therefore, considers actual Garmon representations Venti reviewed and relied upon in deciding to purchase a particular Garmon product and the actual sources cited to debunk those representations. It does not properly turn on the characterizations employed by Venti in effort to create the appearance of a conflict between Venti's sources and Garmon representations.[23]

Applying this analysis here shows the Complaint does not plausibly allege falsity because none of Venti's sources directly address, let alone debunk, any Garmon representation. For starters, none of Venti's sources evaluate a Garmon product or the formulation of ingredients in any Garmon product.[24] As has been determined repeatedly under similar circumstances in other cases, Venti's sources therefore do not plausibly show anything about Garmon products.[25]

---

*18 (S.D. Cal. 12/4/15) |("When it comes to the plausibility analysis, the essential inquiry depends upon a comparison of the match 'between the representations at issue and the evidence that allegedly debunks them.'") quoting Eckler v. Wal-Mart Stores, Inc., 2012 U.S. Dist. LEXIS 157132  (S.D. Cal. 11/1/12).

[23] For example, the representations in Doc.1 at 1:20-23; ¶4, ¶¶7-12; 10:4-8; 11:3-5; 14:20-15:2; 15:23-16:2; 16:11-19; ¶44; 17:25-18:4; ¶¶50-51; ¶59; ¶78, ¶80, 23:26-28; 25:7-12; 25:25-27; ¶101; 29:6-8.

[24] The Scott study evaluated CosequinDS, each capsule of which contained contained "500 mg of glucosamine hydrochloride, 400 mg of chondroitin sulphate and 75 mg of manganese ascorbate."[RJN p.26]. The Scott study evaluated "Dasuquin: glucosamine hydrochloride, sodium chondroitin sulfate and avocado/soybean unsaponifiables pow[d]er" from Nutramax Laboratories, Inc. [RJN p.33, footnote "a."]. Neither the Banfield Journal nor the Plumb's handbook reference any Garmon product or the formulation of ingredients in any Garmon product. [See RJN Exs. 5 & 6; see also RJN Ex. 1 (product labels with list of ingredients, which are summarized in the table above)].

[25] See, e.g. Murray, 2014 U.S. Dist. LEXIS 107721 at *21-22 ("None of the studies cited in the Complaint test Elations or the same combination of ingredients found in Elations, and therefore do not bear on the truthfulness of the representations as to Elations."); Otto v. Abbott Labs., Inc., 2013 U.S. Dist. LEXIS 53287 *13 &*24 (C.D. Cal. 3/15/13) ("[T]he Products contain a blend of several proteins and

14

Moreover, Venti's sources concern the efficacy of glucosamine and chondroitin (or CosequinDS) for treatment of osteoarthritis or joint disease.[26]  The Complaint does not identify any Garmon representation that any Garmon product would treat osteoarthritis or any other disease.  The sources referenced in the Complaint therefore do not show any Garmon representation to be false.[27]

vitamins in addition to HMB. Therefore, the fact that HMB alone might not affect healthy individuals does not logically imply that the Products' specific combination of ingredients is similarly ineffectual….. the Court concludes that the well-pleaded facts do not support a plausible claim for relief….none of the articles are apposite as they fail to test the precise combination of ingredients in the Products."); Toback v. GNC Holdings, Inc., 2013 U.S. Dist. LEXIS 131135, at *16-17 (S.D. Fla. 9/13/13) ("Plaintiff's allegations regarding the inefficacy of glucosamine and chondroitin simply fail to address the efficacy of the TriFlex Vitapak's multifarious composition in promoting joint health, and thus fail to raise Plaintiff's claim, that the Vitapak as a whole does not function as advertised, above the speculative level."); Vigil, 2015 U.S. Dist. LEXIS 163115 at *19 (Finding cited study did not plausibly demonstrate falsity because "[T]his study only addresses one of the thirteen ingredients contained in Staminol, which could support the advertised benefits of Staminol."); Cohen v. Ainsworth Pet Nutrition, LLC, 2021 U.S. Dist. LEXIS 15923 at *9 (C.D. Cal. 1/21/21).

[26] The 2003 Moreau study evaluated three alternatives "for the treatment of dogs with osteoarthritis... in order to identify the best treatment for dogs with osteoarthritis."  [RJN p.24].
    The 2007 Scott study evaluated the "Efficacy of an oral nutraceutical for the treatment of canine osteoarthritis." [RJN p.32].
    Plumb's Veterinary Drug Handbook addresses veterinary prescription of glucosamine/chondroitin sulfate as "an adjunctive treatment for osteoarthritis for osteoarthritis or other painful conditions…in domestic animals…" and in that context states "Well tolerated, but efficacy is uncertain."  [RJN p.40; cf. pp. 40-42].
    The 2010 Banfield Journal article discusses whether "[A] combination of glucosamine hydrochloride and chondroitin sulfate nutraceuticals (i.e., chondroprotectants) improve symptoms associated with joint disease in dogs and cats?" [RJN p.49; cf. pp. 49-52].
[27] Eckler, 2012 U.S. Dist. LEXIS 157132 at *26 ("Ultimately, the Court cannot accept that the studies Eckler cites lend "facial plausibility" to her claims…The studies allegedly show that glucosamine doesn't alleviate the symptoms of

15

Garmon is mindful of what this Court said in its <u>Lytle</u> decision in regard to the line of cases cited in footnote 27 herein, among other things: "[T]hese cases <u>do not</u> create a rule that an osteoarthritis study can never prove the falsity of a general joint health claim." 2019 U.S. Dist. LEXIS 228123 at *15-16.  Nevertheless, the two osteoarthritis studies referenced in Venti's Complaint do not prove the falsity of any general joint health claim from Garmon or show that all glucosamine/ chondroitin supplements are a sham.  Beyond the fact that these studies did not involve any Garmon product or ingredient formulation, both studies evaluated only symptoms of dogs that were confirmed to be caused by osteoarthritis.[28]   It is not

---

osteoarthritis in the hip and knee. That is a very particular showing with respect to a degenerative joint disease, and in the Court's judgment it doesn't address the far more general claim—which *is* made by the Equate representations—that glucosamine is good for the body's joints."); <u>McCrary v. Elations Co., LLC</u>, 2013 U.S. Dist. LEXIS 173591 at *10 (C.D. Cal. 4/24/13) ("Plaintiff's osteoarthritis studies do not address the general claims of joint comfort, health, and flexibility found in Elations' advertising."); <u>Padilla v. Costco Wholesale Corp.</u>, 2013 U.S. Dist. LEXIS 7990 at *9 (N.D. Ill. 1/16/13) ("[T]he…product label does not claim to be effective for the treatment of osteoarthritis. Thus, clinical studies regarding the ineffectiveness of glucosamine or chondroitin in the treatment of osteoarthritis does not have any bearing on the truthfulness of the actual representations made on the…product label."); <u>Murray</u>, 2014 U.S. Dist. LEXIS 107721 at *17-20 ("Plaintiff does not allege in his Complaint that Elations made any representations concerning osteoarthritis…Therefore, the osteoarthritis studies do not lend plausibility to Plaintiff's claims.").

[28] "To be included in the [Moreau] study the dogs… had to show radiographic evidence of osteoarthritis… [and] The pathology had to be the cause of lameness (as determined by a complete orthopaedic examination), which was reported by the owner to be chronic and stable."  [RJN p.24].

To be included in the Scott study, dogs "had to…have a medical history and physical examination findings (performed by a single ACVS Diplomate or single ACVS surgical resident) consistent with chronic osteoarthritis (greater than three months duration) in one or multiple joints, and have confirmed radiographic evidence of osteoarthritis on orthogonal radiographs in the affected joint(s)…" [RJN p.33].

logical or accurate to conclude that the Scott and Moreau studies plausibly "suggest that Cosequin's glucosamine/chondroitin supplements have no effect on canine joint health" because Cosequin was not shown to improve certain symptoms caused by a particular disease, osteoarthritis.  Lytle, 2019 U.S. Dist. LEXIS 228123, at *16-17.  Just like "It is axiomatic that cases are not authority for issues not considered,"[29]  it is just as axiomatic that studies are not authority for issues not studied.[30]

Note that, while the Moreau study did not establish Cosequin significantly improved any evaluated measure of osteoarthritic symptoms, it also did not find that any such measure worsened in the dogs taking Cosequin.  Considering that osteoarthritis is a progressive and degenerative disease [RJN p.24], this circumstance is consistent with the conclusion that Cosequin helped support and maintain joint health even where threatened by osteoarthritis - and not at all supportive of a conclusion that all supplements containing glucosamine and chondroitin "are a sham" and "ineffective."  Even if Cosequin just helps slow the progression of osteoarthritis, that is a benefit, and that is an improvement over the alternative (unimpeded progression of the disease).  No reasonable person who has experienced the progression of osteoarthritis, or who has witnessed it in another being, would say otherwise.

While it is accurate to say all four sources referenced in Venti's Complaint indicate a lack of strong scientific evidence for the proposition that glucosamine and chondroitin effectively treat osteoarthritis, not one of those sources purports to

---

[29] Khrapunov v. Prosyankin, 931 F.3d 922, 933 (9th Cir. 2019).

[30] Cf. Kroessler v. CVS Health Corp., 977 F.3d 803, 810 (9th Cir. 2020)("For example, to substantiate the claim 'supports mood,' it is not necessary to study the effects of a substance on clinical depression. Instead, it is quite possible to assess the effects of a substance on mood changes that do not constitute clinical depression.") citing 65 FR 1000 at 1012.

disprove the possibility that glucosamine and chondroitin may be effective in treating osteoarthritis[31] - let alone purports to prove that all supplements containing glucosamine and chondroitin are a sham, worthless, and ineffective.  If that had been the conclusion, certainly all four of Venti's sources would not have stated a need for further research in regard to efficacy, and certainly Plumb's Veterinary Drug Handbook would not be discussing glucosamine/chondroitin for prescription by veterinarians as something that "may be useful" and "that can be used as adjunctive treatment for osteoarthritis or other painful conditions…" and "for adjunctive treatment of chronic pain."  [RJN pp. 40-41].

In keeping with case law on this point cited in footnote 25 above, each of Venti's four sources indicates that different products, different ingredient

_____

[31] Plumb's says regarding Glucosamine/Chondroitin Sulfate: "These compounds may be useful in treating osteoarthritis or other painful conditions in domestic animals, but large, well-designed controlled clinical studies proving efficacy were not located." [RJN p.40].

The Scott study states: "The results of this study do not support a therapeutic effect from Glu/CS+ in dogs with spontaneous osteoarthritis, but we cannot comment on its overall efficacy given the limited number of dogs (n = 30) and duration of treatment (90 days)."  [RJN p.36].  The Scott study also indicated that prior studies and clinical reports showed variable efficacy in using glucosamine and chondroitin to treat osteoarthritis, citing two studies that demonstrated improvement in osteoarthritic symptoms: "Dogs receiving the Glu/CS showed statistically significant improvements from the baseline, specifically in regards to pain, weight-bearing and overall condition scores at 70 days….[and regarding the other study] The Glu/CS treatment group had a significant reduction in pain on subjective assessments, however the ground reaction forces remained unchanged." [RJN pp.32-33, endnotes 10 & 12 at p.37].

The Banfield Journal states: "Further studies are necessary to determine how purity, source and composition affect efficacy of glucosamine hydrochloride and chondroitin sulfate preparations in veterinary patients." [RJN p.50].

The Moreau study states: "The recommended therapeutic dose of CS-G-M may have been insufficient to provide a clinical improvement, and larger doses or modifications to the proportions of its constituents may help to make it more effective, possibly in dogs with less severe osteoarthritis."  [RJN p.28].

18

combinations, and different doses may lead – or actually has led - to different results.[32]

For example, the Scott study referenced research finding glucosamine and chondroitin supplemented with omega-3 fatty acids to be effective in treating dogs with osteoarthritis.[33]  None of Venti's sources reference a different result for this combination of ingredients.  While the glucosamine/chondroitin supplements evaluated in the Moreau and Scott studies did not contain omega-3 fatty acids, six of the Garmon products referenced in the Complaint do, including the NaturVet Glucosamine DS Plus™ Soft Chews allegedly purchased by Venti.  [¶16; RJN Ex. 1].

For another example, the 2010 Banfield Journal referenced a research study that showed improved subjective and objective measures of mobility with green-

---

[32] "Bioequivalence between products cannot be assumed and independent analysis has shown a wide variation in products." [RJN p.42].  "[C]hoose products carefully; large variation in commercially available products."  [RJN p.40].  "Do not switch brands from that prescribed without first contacting your veterinarian." [RJN p.41].  "The purity and quality of these compounds vary widely in commercial supplements." [RJN p.49].

"The recommended therapeutic dose of CS-G-M may have been insufficient to provide a clinical improvement, and larger doses or modifications to the proportions of its constituents may help to make it more effective, possibly in dogs with less severe osteoarthritis." [RJN p.28].  "Contributions to therapeutic variation include differences in study design and additives in Glu/CS product studied. These differences make it difficult to draw an all encompassing conclusion regarding Glu/CS products safety and efficacy in dogs." [RJN p.35]. "Further studies are necessary to determine how purity, source and composition affect efficacy of glucosamine hydrochloride and chondroitin sulfate preparations in veterinary patients." [RJN p.50].

[33] "In addition, systematic reviews examining the use of nutraceuticals in dogs with osteoarthritis reached the conclusion that the evidence of the efficacy of nutraceuticals is poor, with the exception of diets supplemented with omega-3 fatty acids,…" [RJN p.32].

19

lipped mussel extract and glucosamine/chondroitin sulfate.[34]  None of Venti's sources reference a different result for this combination of ingredients.  While the glucosamine/chondroitin supplements evaluated in the Moreau and Scott studies did not contain green-lipped mussel, four of the Garmon products referenced in the Complaint do contain green-lipped mussel, including the NaturVet ArthriSoothe-GOLD® Advanced Care Soft Chews allegedly purchased by Venti [¶15; RJN Ex. 1].

Now, Garmon did not and is not claiming its products effectively treat osteoarthritis.  The point is that Venti's sources do not even disprove that glucosamine and chondroitin may be useful for pets with osteoarthritis; Venti's sources show even that proposition is unsubstantiated as opposed to proven false.

With regard to actual Garmon representations, Venti's sources actually tend to lend support, indicating that glucosamine and chondroitin do help support general joint health.

The 2003 Moreau study referenced three studies demonstrating glucosamine, chondroitin, and manganese ascorbate (the ingredients in Cosequin) provide joint benefits other than effective osteoarthritis treatment, including that this formulation was "shown [A] to provide prophylactic protection against synovitis…[B] to retard the degenerative process synergistically…and [C] to modulate the metabolism of articular cartilage…" [RJN p.24].

---

[34] "Some evidence exists that diets supplemented with green-lipped mussel extract, glucosamine hydrochloride and chondroitin sulfate improves mobility in cats with joint disease." [RJN p.50]. Referring to Lascelles BD, DePuy V, Thomson A, et al. Evaluation of a therapeutic diet for feline degenerative joint disease, J Vet Intern Med. 2010;24(3):487-495, which is a study that showed improved subjective and objective measures of mobility with green-lipped mussel extract and glucosamine/chondroitin sulfate. [RJN pp.51-52].

Consistent with the Moreau study's discussion of general joint benefits from the formulation of ingredients in Cosequin, Plumb's explains the "Pharmacology/ Actions" of glucosamine and chondroitin separately:

> Cartilage cells use glucosamine to produce glycosaminoglycans and hyaluronan. Glucosamine also regulates synthesis of collagen and proteoglycans in cartilage and has mild anti-inflammatory effects due to its ability to scavenge free radicals. Chondrocytes normally produce ample quantities of glucosamine from glucose and amino acids, but this ability may diminish with age, disease, or trauma. Exogenously administered glucosamine appears to be able to be utilized by chondrocytes.
>
> Chondroitin sulfate possesses several pharmacologic effects. It appears to inhibit destructive enzymes in joint fluid and cartilage. Thrombi formation in microvasculature may be reduced. In joint cartilage, it stimulates the production of glycosaminoglycans and proteoglycans. [RJN p.40]

The Banfield Journal also references evidence that glucosamine and chondroitin help support and maintain joint health, including an article stating that glucosamine and chondroitin used in vitro "support the chondroprotective effect" and a study with the complementary finding that orally dosed glucosamine and chondroitin are bioavailable.  [RJN pp.51-52].

This material is what Venti's counsel cherry-picked to show Garmon's products are "a sham," and it plausibly shows nothing except that two ingredients used (among other ingredients) in various Garmon products have been shown to support general joint health and those two ingredients may or may not be helpful for osteoarthritis.

Venti's Complaint does not plausibly allege any Garmon misrepresentation, and Venti's Complaint should therefore be dismissed.

///

///

21

# III.  CONCLUSION

Venti's Complaint should be dismissed because it does not plausibly allege the falsity of any Garmon representation.  Dismissal of certain claims within Venti's Complaint is also warranted for lack standing and the failure to plausibly allege injury or causation (all claims to the extent based on products or representations other than what is alleged in ¶¶15&16), and/or the failure to allege other prerequisites of a cognizable claim (Counts III, V & VII).


DATED:     June 13, 2022                    GIBBS & FUERST, LLP


                                       BY:    ___/s/Kevin L. Borgen __
                                            RUSSELL S. FUERST
                                            KEVIN L. BORGEN
                                            Attorneys for Defendant,
                                            The GARMON
                                            CORPORATION